**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

ROBERTA L. REID,                                        Case No. 1:12-cv-207

               Plaintiff,                             Dlott, C.J.
                                                        Bowman, M.J.

      v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

             Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Roberta Reid filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents a single claim of error for this Court's review. As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

In September 2008, Plaintiff filed an application for Supplemental Security Income (SSI) alleging a disability onset date of September 8, 2008 due to physical and mental impairments. After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). On July 14, 2010, an evidentiary hearing was held, at which Plaintiff was represented by counsel. (Tr. 28-55). At the hearing, the ALJ heard testimony from Plaintiff and Charlotta Ewers,

an impartial vocational expert. On March 16, 2011, ALJ Carol Bowen denied Plaintiff's application in a written decision. (Tr. 9-21).

The record on which the ALJ's decision was based reflects that Plaintiff was 54 years old on the date of her application, and had a limited education. (Tr. 20). She had past relevant work as a home health aide and hospital cleaner. (Tr. 20).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "mild lumbar degenerative disc disease; anxiety disorder; depression with psychotic features; history of alcohol abuse; and chronic obstructive pulmonary disease (COPD) with tobacco use." (Tr. 11). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. Despite these impairments, the ALJ determined that Plaintiff retains the RFC to perform a range of medium work, with the following limitations:

> 1) occasional use of ramps or stairs; 2) no ladders, ropes, or scaffolds; 3) frequent stooping, kneeling, crouching or crawling; 4) clean air, temperature controlled environment; 5) no exposure to hazardous machinery or unprotected heights; 6) accessible bathroom facilities on the work premises; 7) limited to simple, routine, repetitive tasks; 8) occasional changes in the work-setting with no work requiring a production rate pace; 9) superficial interaction with the public and co-workers and occasional supervision (no over the shoulder supervision).

(Tr. 15). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that she can perform jobs that exist in significant numbers in the national

2

economy.  (Tr. 20).  Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to SSI.  (Tr. 20-21).

The Appeals Council denied Plaintiff's request for review.  Therefore, the ALJ's decision stands as the Defendant's final determination.  On appeal to this Court, Plaintiff maintains that the ALJ's decision is not substantially supported because she failed to give controlling weight to the Plaintiff's treating sources.  Upon careful review and for the reasons that follow, the undersigned finds Plaintiff's assignment  is not well-taken.

## II.  Analysis

### A.  Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §1382c(a).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a

whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . .. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

**B.  The ALJ's Evaluation of the Opinion Evidence**

In the present case, Plaintiff asserts that the ALJ's decision is not supported by substantial evidence because she improperly rejected the opinions of Plaintiff's treating physician, Dr. Kilari, and her treating psychiatrist, Dr. Fitz.

*1.  Applicable Law*

In evaluating the opinion evidence, "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'"  *Blakley v. Commissioner Of Social Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004).  If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician.  *Wilson*, 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(d)(2).

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] [the claimant's] treating source's opinion."  20 C.F.R. § 404.1527(d)(2); but see *Tilley v. Comm'r of Soc. Sec.*, No. 09–6081, 2010 WL 3521928, at *6 (6th Cir. Aug.31, 2010) (indicating that, under *Blakely* and the good reason rule, an ALJ is not required to explicitly address all of the six factors

within 20 C.F.R. § 404.1527(d)(2) for weighing medical opinion evidence within the written decision).

As such, the opinions of treating and examining sources are generally entitled to more weight than opinions of consulting and non-examining sources. 20 C.F.R. § 404.1527(d); see also *West v. Comm'r Soc. Sec. Admin.*, 240 Fed. Appx. 692, 696 (6th Cir. 2007) (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981)) ("[R]eports from treating physicians generally are given more weight than reports from consulting physicians ...."). However, an ALJ need not credit a treating physician opinion that is conclusory and unsupported. *See Anderson v. Comm'r Soc. Sec.*, 195 Fed. Appx. 366, 370 (6th Cir. 2006) ("The ALJ concluded, properly in our view, that the [treating physician's] treatment notes did not support and were inconsistent with his conclusory assertion that appellant was disabled."); *see also Kidd v. Comm'r of Soc. Sec.*, 283 Fed. Appx. 336, 340 (6th Cir. 2008) (citing C*utlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994)) (holding that an ALJ need not credit a treating physician's conclusory opinions that are inconsistent with other evidence). In this case, the undersigned finds that ALJ properly weighed the opinion evidence of record.

   2. *Evaluation of Dr. Kilari's Opinion and Plaintiff's Physical RFC Assessment*

With respect to Plaintiff's physical impairments, the ALJ determined that Plaintiff retained the RFC to perform medium work as outlined above. (Tr. 15). In so concluding, the ALJ determined that there is substantial evidence to show that Plaintiff is unable to stand or walk sufficiently to do medium work. (Tr. 16). The ALJ first noted that the record contained generally normal or mild findings. Specifically, radiological testing in

6

2007 and January 2009 revealed mild degeneration and mild spondylosis. The ALJ further noted that Plaintiff's most recent clinical studies from September 2009 indicate a mild increase at the L4-5 disc protrusion that abutted the nerve root, but did not encroach on the neural foramen and there was no stenosis. (Tr. 581). X-rays of Plaintiff's left shoulder in January 2009 were normal. Additionally, the ALJ also noted that Dr. McCloud, a state agency physician, opined that Plaintiff did not have any medically determinable severe impairment. (Tr. 12, 19, 514).

The ALJ further evaluated the findings of Plaintiff's treating physician Dr. Kilari, who opined that Plaintiff suffered from disabling limitations.[1] (Tr. 688). The ALJ, however, rejected Dr. Kilari's August 2010 opinion because "it is not medically supported by the evidence of record." (Tr. 18). In support of this finding, the ALJ noted that Plaintiff's conservative and intermittent treatment for her musculoskeletal pain was inconsistent with Dr. Kilari's opinion of permanently disabling symptoms. (Tr. 18). The ALJ discussed that Plaintiff apparently did not enroll in physical therapy, despite Dr. Kilari's referrals in March 2009, October 2009, and April 2010 (Tr. 11, 18, 578, 582-83, 681). The ALJ further explained that Dr. Kilari's opinion of August 2010 was "rejected" because it was "not medically supported by the evidence of record." (Tr. 18). Dr. Kilari's

---

[1] In August 2010, Dr. Kilari, Plaintiff's treating physician, completed an RFC assessment wherein he opined that Plaintiff could sit for one hour out of eight, stand for one hour out of eight, and could walk only fifteen minutes out of eight. She could alternate positions for four hours out of eight. She could not perform these activities on a full-time basis. She could occasionally lift/carry five pounds. She could not perform even sedentary work activity. (Tr. 688). She could occasionally bend, twist side to side, reach above shoulder level on the right and left, and climb stairs. She could not squat, kneel, or climb ladders, scaffolds, etc. She was moderately restricted from unprotected heights, working around moving machinery and exposure to marked changes in humidity or temperature. She was to avoid working for substantial periods outside in the cold or rain and exposure to dust, fumes, or gases. (Tr. 689). She needed complete freedom to rest without restrictions. She had to lie down for substantial periods during the day. She would miss more than five days a month. The restrictions were due to her severe back pain. (Tr. 690).

responses consisted merely of circles and check marks. (Tr. 18, 688-90). As the ALJ noted, Dr. Kilari's only narrative explanation in support of his assessment was "[s]evere back pain" without any mention of Plaintiff's allegedly disabling leg pain. (Tr. 18, 688-90). Furthermore, Dr. Kilari's assessment failed to specify the cause of Plaintiff's back pain. (Tr. 688-90).

The ALJ further determined that Plaintiff's conservative treatment history and reported activities were inconsistent with her complaints of disabling pain and mental limitations. (Tr. 16). Notably, although Plaintiff alleged disability due to leg and back pain in September 2008, she was not taking any pain medication at that time. (Tr. 18, 99-105). Moreover, during an emergency room visit in February 2009, Plaintiff made no complaints about musculoskeletal pain. (Tr. 55, 557). Plaintiff also reported making frequent trips to visit relatives in Kentucky and southeastern Ohio, going tubing for a day at a lake, and camping with relatives. *Id.* The ALJ further indicated that Plaintiff continues to smoke despite her recent diagnosis of COPD. (Tr. 16).

Upon careful review, the undersigned finds that the ALJ properly evaluated Dr. Kilari's findings in accordance with agency regulations and controlling law; and the reasons given by the ALJ in rejecting Dr. Kilari's unsupported opinions are substantially supported. By finding that Dr. Kilari's opinion was neither consistent with the evidence nor well-supported, the ALJ not only explained why the opinion was not entitled to controlling weight, but also provided "good reasons" for rejecting the opinion. (Tr. 18). See 20 C.F.R. § 416.927(d)(2); 20 C.F.R. § 416.927(d)(3) (supportability); 20 C.F.R. § 416.927(d)(4) (consistency). *See also Buxton v. Halter*, 246 F.3d 762, 773 (6th

8

Cir.2001) (ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.")

Plaintiff also argues that the ALJ's decision is not supported by substantial evidence because the RFC assessment, limiting Plaintiff to medium exertion, is not supported by a medical opinion. As noted above, the state agency physicians determined that Plaintiff did not have any medically determinable severe impairment. (Tr. 12, 514). The only other opinion evidence of record is that of Dr. Kilari, Plaintiff's treating family physician, who assigned functional limitations that were not compatible with gainful employment. (Tr. 688). Thus, Plaintiff asserts that the ALJ improperly substituted her own medical judgment for that of a treating physician when she determined that Plaintiff was capable of performing a range of medium exertional work.

However, it is the responsibility of the ALJ to formulate the RFC. *See Mays v. Astrue*, CIV A 08-20-HRW, 2008 WL 4594625 (E.D. Ky. Oct. 15, 2008) (citing 20 C.F.R. §§ 404.1546(c), 416.946(c). As previously found by this Judicial Officer, the ALJ is not required to adopt verbatim the opinion of any particular doctor. *Hericks v. Astrue*, 2012 WL 161105 (S.D. Ohio Jan. 19, 2012) (Bowman, MJ). Rather, it is the province of the ALJ to coalesce all of the record evidence in making his or her RFC determination. *Id.* Such is the case here. Notably, in formulating Plaintiff's RFC, the ALJ's decision shows that she considered the medical evidence of record during the relevant period, the medical opinions of record, as well as Plaintiff's testimony and reported activities. The ALJ properly evaluated the record evidence and provided a clear explanation for the

conclusions reasoned.  In light of the foregoing the undersigned finds that the ALJ reasonably concluded that Plaintiff could perform medium work.

### 3.  Evaluation of Dr. Fitz' Opinion and Plaintiff's Mental RFC Assessment

With respect to Plaintiff's mental impairments, the ALJ noted Plaintiff has been diagnosed with anxiety disorder, NOS, major depressive disorder with psychotic features, and a history of alcohol abuse.  As a result of these impairments, the ALJ determined that Plaintiff is mildly impaired in her activities of daily living, moderately impaired in her ability to maintain social functioning, and moderately impaired in her ability to maintain concentration, persistence, and pace.  Thus, the ALJ limited Plaintiff to work with only simple, routine, repetitive tasks; occasional changes in the work-setting with no work requiring a production rate pace; and superficial interaction with the public and co-workers and occasional supervision.  In making this finding the ALJ relied on the findings from Dr. Williams, a psychologist who evaluated Plaintiff in January 2009 at the request of the state agency.  Dr. Williams determined that Plaintiff was moderately limited in her ability to understand, remember, and carry out detailed instructions; and maintain attention and concentration for extended periods.  (Tr. 496).  He further opined that Plaintiff had a mild restriction in her daily activities and a moderate restriction in her social functioning and in her ability to maintain concentration, persistence, or pace.  (Tr. 500).

The ALJ also considered the records from South Community Behavioral Clinic where Plaintiff treated with Dr. Fitz, a psychiatrist.  The ALJ noted that treatment notes

10

from Dr. Fitz and the therapist from her office showed that Plaintiff's mental health treatment history has been "conservative." (Tr. 14).  Plaintiff reported that her medication was helpful and that it did not cause any side effects. (Tr. 410, 420, 596, 602, 605).   The ALJ also noted that Plaintiff currently sees a therapist and psychiatrist every three months and the record indicates continued improvement with medication compliance. (Tr. 17).

In evaluating Plaintiff's mental RFC, the ALJ, however rejected Dr. Fitz's 2008 and 2009 reports that Plaintiff's mental impairments render her unemployable.  The ALJ found that Dr. Fitz's reports were "not medically supported by the evidence."  The ALJ noted that Plaintiff's mental health treatment has been conservative with only one in-patient hospitalization in 2005.   Since that time, the record indicates a noted improvement in Plaintiff's mental health condition.  As noted above, Plaintiff reported her medication is helpful, there are no side effects and her alcohol abuse is in remission.[2] Additionally, with respect to Plaintiff's homicidal thoughts, the ALJ noted that such thoughts were appeared to be oriented only toward Plaintiff's ex-husband with whom she had poor relations and is now divorced.  The record also indicates that Plaintiff has good relationships with her family; and recently spent around five months visiting her family in Kentucky and spent time with her son to support him after he was released from prison. (Tr. 14, 16, 17, 32, 605).

---

[2] Plaintiff was hospitalized from June 20, 2005 through June 23, 2005 for depression with suicidal and homicidal ideation.  Plaintiff reported thoughts of suicide and killing her ex-husband when she visited the ER for chest pain in March 2009, she attributed this to the stress of fighting with her ex-husband for the past two weeks (Tr. 523, 525, 528). Moreover, after receiving treatment for her chest pain, she "changed her mind about being suicidal or homicidal," and a psychiatrist confirmed that Plaintiff was not at risk for suicide or homicide and could return home.  (Tr. 523, 525, 528, 539).

Plaintiff argues, however, that the ALJ should have given controlling or deferential weight to the disabling opinions of treating psychiatrist Dr. Fitz instead of relying on state agency psychologist Dr. Williams' limitations.  Plaintiff argues that Dr. Williams' opinion was not based on a complete record and further cites to the *Blankenship v. Bowen*, wherein the Sixth Circuit Court of Appeals stated that:

> A psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as a medical impairment ... consequently; the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine.... In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices [sic] in order to obtain objective clinical manifestations of medical illness.... When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.

*Blankenship v. Bowen*, 874 F.2d 1116, 1121, (6th Cir.1989).

Plaintiff's reliance *on Blankenship* is misplaced.  The court recognizes that "[t]he report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation." *Id.*  In this case, as detailed above, the ALJ rejected Dr. Fitz's disabling opinions because they were inconsistent with his treatment notes, Plaintiff's overall treatment history and her reported activity.  *Kester v. Astrue*, 3:07CV00423, 2009 WL 275438 (S.D. Ohio Feb. 3, 2009) (while an ALJ is free under *Blankenship* to reject a psychiatrist's opinion, there must be some valid reason to do so).  Furthermore, in *Blankenship*, "upon review of the record", the court found "no medical evidence contradicting [the consultative

12

psychologist's] opinion". *Blankenship*, 874 F.2d at 1121. Here, the record contains two opinions contradicting Dr. Fitz' disability finding and supporting the ALJ's conclusions, Dr. Williams and Dr. Marlow.[3]

Furthermore, contrary to Plaintiff's assertion, the ALJ properly considered that Plaintiff socializes well with her family, traveled to see her children, did chores, and was able to care for herself. While these activities do not necessary establish an ability to work, the ALJ reasonably considered these activities when evaluating Plaintiff's allegations of disabling symptoms. See 20 C.F.R. § 404.1529(c)(3)(i) (relevance of activities when evaluating pain and functional limitations); see also *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) (permitting an ALJ to consider daily activities such as housework and social activities in evaluating complaints of disabling pain).

In light of the foregoing, the undersigned finds that the ALJ provided good reasons for giving neither controlling weight nor deference to the opinions of Dr. Fitz. As detailed above, ALJ found that the restrictive nature of the remainder of Dr. Fitz's disabling opinions were not consistent with his own treatment notes or supported by the other record evidence. *See Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 175–76 (6th Cir. 2009) ("Where the opinion of a treating physician is not supported by objective evidence or is inconsistent with the other medical evidence in the record, this Court generally will uphold an ALJ's decision to discount that opinion.").

---

[3] Dr. Marlow reviewed the record in June 2009 and affirmed Dr. Williams' assessment. (Tr. 580).

### III.  Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT**: 1)  The decision of the Commissioner to deny Plaintiff SSI benefits be **AFFIRMED** because it is supported by substantial evidence in the record as a whole; and 2)  As no further matters remain pending for the Court's review, this case be **CLOSED.**

*/s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

14

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ROBERTA L. REID,                                    Case No. 1:12-cv-207

            Plaintiff,                              Dlott, C.J.
                                                    Bowman, M.J.
      v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

            Defendant.


**NOTICE**

       Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written

objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS**

of the filing date of this R&R. That period may be extended further by the Court on

timely motion by either side for an extension of time. All objections shall specify the

portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law

in support of the objections. A party shall respond to an opponent's objections within

**FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to

make objections in accordance with this procedure may forfeit rights on appeal. *See*

*Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.

1981).

15